IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                             Cr. No. 14-3761 JCH

DONALD ALVIN TOLBERT,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the following three motions: (1) *Defendant's Motion in Limine to Exclude Admission of Testimony of What Yungmuffman Means* [Doc. 167], (2) *United States' Motion in Limine to Admit and Publish Select Child Pornography Exhibits* [Doc. 168], and (3) *United States' Motion to Admit Trade Inscription Evidence Pursuant to Rule 902(7)* [Doc. 170].

## BACKGROUND

Tolbert is charged by superseding indictment with (1) notice and advertisement of visual depictions of minors engaged in sexually explicit conduct (Count 1); (2) receipt of a visual depiction of minors engaged in sexually explicit conduct (Counts 2-8); (3) distribution of a visual depiction of minors engaged in sexually explicit conduct (Counts 9-11); (4) possession of a matter containing visual depictions of minors engaged in sexually explicit conduct (Counts 12-13); and (5) a felony committed by a registered sex offender (Count 14). [See Doc. 48]. According to the Government, the charges arise from three sources: (1) Tolbert's public profile on IMGSRC.ru, (2) emails to and from Tolbert's AOL email accounts, and (3) evidence recovered from the e Machine

described in Count 12 and the Dell computer described in Count 13 which were recovered from the home of Defendant's mother, Margaret Tolbert.

**DISCUSSION**

**I.     Admissibility of Testimony Regarding the Meaning of "Yungmuffman" [Doc. 167]**

Defendant Tolbert moves the Court for an order excluding from trial—both in opening statements and in testimony—of Tolbert's use of the screen name "Yungmuffman" on his IMGSRC.ru profile. As grounds for this motion, Tolbert argues that "no government agent has personal knowledge of what 'Yungmuffman' meant in this case" and that testimony as to the meaning of the word is "inherently speculative." Doc. 167 at 3; *see also* Doc. 196 at 1-2. Second, he argues that the meaning of the word is irrelevant. Doc. 167 at 4. Finally, Tolbert contends that the evidence is more unfairly prejudicial than probative and should therefore be excluded under Rule 403. *Id.*

In response, the Government states that it will offer testimony that "Yungmuffman" "can be understood as three separate words, that 'YUNG' is a misspelling of 'young,' that ''YUNG' is an adjective describing 'MUFF,' and that 'MUFF' is slang for female genitalia." Doc. 184 at 2. The Government states that this testimony will be "based upon the sentence structure, common understandings of the terms, and the context provided by other content on Tolbert's profile. *Id.*

First, the Court disagrees that testimony about the meaning of "Yungmuffman" is inherently speculative as to render it inadmissible. In the Court's view, it is a slang term that most, if not all, members of the jury will understand. As the Government accurately points out, the common meaning of the slang term "muff" is no secret.  Other federal courts have recognized the meaning of the term and its sexual implications. *See, e.g., Tilton v. Playboy Entertainment Group,*

*Inc.*, 554 F.3d 1371, 1374 (11th Cir. 2009). Further, the Government argues that "yung" is simply a misspelling of the word "young." The Rules of Evidence do not require the Court or the jury to throw common sense to the wayside.

Furthermore, many courts permit a law enforcement agent with experience investigating certain types of crimes or criminal organizations to testify regarding the methods used by such criminals, even though such testimony does not derive from formal "scientific" methods. *See, e.g., United States v. Kamahele*, 748 F.3d 984, 998 (10th Cir. 2014); *United States v. Garcia*, 635 F.3d 472, 477 (10th Cir. 2011); *United States v. Roach*, 582 F.3d 1192, 1206 (10th Cir. 2009); *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991). For example, an agent or officer with past experience with code or slang words typical to a criminal enterprise can testify as to the nonliteral meaning of code words or phrases heard over wiretaps. *United States v. Quintana*, 70 F.3d 1167, 1171 (10th Cir. 1995). Similarly, to the extent that a Government witness has past experience with slang words, such as "muff," used in the context of crimes of sexual exploitation, that testimony would be admissible.

Second, the evidence as to the meaning of "Yungmuffman" is relevant. Tolbert is charged with advertising, receiving, distributing, and possessing materials depicting minors engaged in sexually explicit conduct. Evidence regarding the meaning of his chosen profile name tends to make the fact of Tolbert's sexual interest in young females and their genitalia more probable than without that evidence. That, in turn, provides a motive for his alleged crimes.

Nor is the probative value of the evidence substantially outweighed by the danger of unfair prejudice to Tolbert, confusion of the issues, or misleading the jury under Rule 403's balancing test. Tolbert's alleged use of the name "Yungmuffman" has a high probative value. In order to prove Count I, the Government must show that Tolbert made his IMGSRC profile as a notice and

advertisement that sought or offered to receive, exchange, buy, produce, distribute, or reproduce child pornography. Along with other elements of that profile (the name "Donnie," user info stating "I love girls between 8-15 . . .", and forensic evidence showing the profile was accessed and edited from Tolbert's mother's computers), naming the profile "Yungmuffman" reveals Tolbert's sexual interest in minors, as well as an intent to display that interest to others. This, in turn, would show motive, intent, knowledge, and absence of mistake with regard to the offer to receive, exchange, produce, display, distribute, and possess child pornography. On the other hand, the unfair prejudice from the evidence is minimal. As discussed above, it is highly likely that many members of the jury will quickly draw their own conclusions about the meaning of the name "Yungmuffman" based on their common knowledge and life experience; those who do not are entitled to hear evidence regarding its meaning. Although that evidence may be prejudicial to Tolbert's case, Rule 403 is concerned with *unfair* prejudice. For the reasons discussed herein, the prejudice to Tolbert from the admission of evidence of the meaning of "Yungmuffman" is not unfair.

Tolbert's motion to exclude the evidence will be denied.

## II.     Admissibility of Images of Child Pornography [Doc. 168]

The Government moves for an order allowing it to show the jury "select images and videos of the child pornography received, possessed, and distributed by Defendant Donald Tolbert." It argues that in order for the jury to determine beyond a reasonable doubt whether Tolbert received, possessed, or distributed child pornography as charged in the indictment, its members must see those images. Otherwise, the jury cannot determine whether the images meet the federal definition of child pornography. According to the Government, Tolbert received, possessed, and distributed "hundreds of files" containing child pornography, but it does not intend to show them all to the

4

jury. Rather, it asks for an order permitting it to show the jury "all the files referenced by name in Counts 2-11 of the Superseding Indictment, as well as a subset of the child pornography Tolbert possessed on each of the two charged computers."

In his response [Doc. 186], Tolbert states merely that he "objects to the presentation of these depictions due to unfair prejudice," and that a "determination of the more limited scope of the depictions will have to be discussed." Doc. 186 at 2-3.

The Government argues that it has a right to fully present its evidence even if Tolbert decides to stipulate that the images contain child pornography. It cites *United States v. Campos*, 221 F.3d 1143, 1149 (10th Cir. 2000). In *Campos*, the defendant offered to stipulate that the images he was charged with transporting were child pornography, and he argued that the trial court's decision to allow the jury to see the images was unfairly prejudicial. *Id.* at 1148. The Tenth Circuit disagreed, stating that "Campos's offer to stipulate did not involve his legal status but rather the gist of the government's current case against him—the two pornographic images that he allegedly transported via computer. Mr. Campos's offer thus sought to deprive the prosecution of the very opportunity that should be protected: the opportunity to present the 'concrete events of later criminal behavior charged against [a defendant].'" *Id.* at 1149 (internal citations and quotations omitted).

In *Campos,* the Tenth Circuit distinguished the Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172 (1997). In *Old Chief*, a case involving a charge of being a felon in possession of a firearm, the Supreme Court held that the district court abused its discretion when it rejected the defendant's offer to admit that he had been previously convicted of a felony and instead allowed the prosecution to introduce the judgment of conviction. *Id.* at 174. In reaching this conclusion, the Supreme Court reasoned that because it was merely the fact of the defendant's

5

*legal status* as a previously convicted felon that was at issue, the defendant's stipulation satisfied the element of the offense charged. *Id*. at 189-90. There was no need to give the jury the details of the defendant's previous conviction in order to allow the prosecution to explain the events that gave rise to the charges in the case at hand: the principle that "the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story has [] virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him." *Id*. at 190. In contrast, the child pornography in *Campos* was much more than a bare fact of the defendant's legal status, such as being a convicted felon; rather, the child pornography was part and parcel of the concrete events of criminal behavior charged against the defendant. *Campos*, 221 F.3d at 1149. *See also United States v. Schene*, 543 F.3d 627, 643 (10th Cir. 2008) (finding no error in court's decision to admit into evidence the images charged in the indictment because they "were the gist of the government's current case against Schene. The government was entitled to prove its case, and given the charges against Schene, those images were not unfairly prejudicial under Rule 403."); *United States v. Dodds*, 347 F.3d 893, 898-99 (11th Cir. 2003) (concluding that exposing the jury to 66 of the 3,400 images of child pornography found in defendant's possession was not unfairly cumulative and prejudicial).

The Court concludes that the images may be shown to the jury. As discussed above, the Tenth Circuit has concluded that it is appropriate to show images of child pornography to the jury when possession or distribution of those same images constitutes the conduct charged in the indictment. Further, the Court concludes that admitting the evidence will not violate Rule 403. The photographs and videos are probative for several reasons: they will show whether or not the images actually were child pornography, they will tend to show that Tolbert knew the images were

6

child pornography, and they suggest intent on Tolbert's part to possess and distribute such pornography. Also, in order to minimize any unfair prejudice the Court will caution prospective jurors during *voir dire* that they will see photographs depicting child pornography and will exclude jurors who indicate that they would be unable to reach a fair verdict when faced with such evidence. Finally, based on the proffer by the Government, the Court intends to admit into evidence only a small proportion of the total number of images found in Tolbert's possession. The Government will not be permitted to belabor the issue by showing the jury an excessive number of images.

With the foregoing proviso, the Government's motion will be granted.

### III. Admissibility of Trade Inscription Evidence Pursuant to Rule 902(7) [Doc. 170]

The Government moves to admit evidence of the place of manufacture of two computer hard drives collected from Tolbert's mother's home that allegedly contain images of child pornography that were collected and possessed by Tolbert. With the motion, the Government proffered photographs of both hard drives that show labels that apparently were affixed by the manufacturers. One hard drive's label states that it is a product of Thailand, the other that it was manufactured in Malaysia. The Government avers that the evidence is relevant to establish that the hard drives used to store the child pornography were foreign products and thus, to reach the home of Tolbert's mother in New Mexico, must have been mailed, shipped, or transported in interstate or foreign commerce as required by 18 U.S.C. § 2252(a)(4)(B). Although Tolbert filed a response [Doc. 187], it contains no meaningful legal argument on the issue raised in the motion.

The Federal Rules of Evidence do not require extrinsic evidence of authenticity for inscriptions, signs, tags or labels purporting to have been affixed in the course of business which

indicate workmanship, control or origin; rather, under Rule 902(7) they are self-authenticating. Fed. R. Evid. 902(7). For example, in *United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir. 1992), *overruled on other grounds*, *United States v. Gomez*, 302 Fed. App'x 596 (9th Cir. 2008), the court held that Rule 902(7) did not require extrinsic evidence of authenticity for inscriptions, signs, tags or labels which indicate workmanship, control or origin. 972 F.2d at 1004. The Court agrees that Rule 902(7) also applies to the labels on the hard drives at issue in this case. No further authentication will be needed.

Nor is the information on the hard drives' labels hearsay. In *Alvarez*, the court held that the manufacturer's inscription on a firearm, "Garnika, Spain," was a "mechanical trace" and not a statement or assertion subject to the hearsay rule. 972 F.2d at 1004. *See also United States v. Thody*, 978 F.2d 625, 631 (10th Cir. 1992) (concluding that the manufacturer's imprint on a gun is not hearsay). Similarly, in *United States v. Brown*, 2009 WL 2090193 at *10-11 (S.D. Ind. July 13, 2009) (unpublished), the Court concluded that a trade inscription on a computer hard drive indicating that it had been manufactured in Malaysia was self-authenticating under Rule 902(7) and did not constitute hearsay.

Based on the foregoing, the Court concludes that the trade inscriptions on the two hard drives in this case will be admissible in evidence, and that the Government's motion will be granted.

**IT IS THEREFORE ORDERED** that:

(1) *Defendant's Motion in Limine to Exclude Admission of Testimony of What Yungmuffman Means* [Doc. 167] is **DENIED**,

(2) *United States' Motion in Limine to Admit and Publish Select Child Pornography Exhibits* [Doc. 168] is **GRANTED**, and

(3) *United States' Motion to Admit Trade Inscription Evidence Pursuant to Rule 902(7)* [Doc. 170] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**